1  **WO**

2

3

4

5

6  **IN THE UNITED STATES DISTRICT COURT**

7  **FOR THE DISTRICT OF ARIZONA**

8

9  Oliver Complot, et al.,                          No. CV-25-00255-PHX-SMB

10                    Plaintiffs,            **ORDER**

11  v.

12  US Bank NA, et al.,

13                    Defendants.

14

15       Before the Court are three motions to dismiss Plaintiffs' Oliver Complot and Corina

16  Tolamaa (collectively, "Plaintiffs"), who are proceeding *pro se*, First Amended Complaint

17  (Doc. 8).  The Defendants and their respective motions are as follows: Credit Control, LLC

18  ("Credit Control") (Docs. 16–17); U.S. Bank National Association ("U.S. Bank") (Doc.

19  25); and LVNV Funding LLC ("LVNV") (Doc. 35).  Also before the Court are Plaintiffs'

20  Motion for Leave to File Sur-Reply to LVNV (Doc. 44), and their Motion for Leave to File

21  a Second Amended Complaint (Docs. 51–52).    Defendants U.S. Bank and LVNV

22  responded in opposition to Plaintiffs' Motion for Leave to File a Second Amended

23  Complaint.  (Doc. 53, 54.)  Having reviewed the briefing and the relevant case law, the

24  Court **grants** all three motions to dismiss, **denies** Plaintiffs' Motion for Leave to File

25  Sur-Reply, and **grants in part** Plaintiffs' Motion for Leave to File a Second Amended

26  Complaint.

27  **I.      BACKGROUND**

28       Plaintiffs Oliver Complot and Corina Tolamaa are married.  (Doc. 8 at 2.)  Plaintiff

Complot took out credit with U.S. Bank, which he eventually stopped paying back.  (Doc. 8 at 53, 56–60.)  LVNV purchased the account and Resurgent Capital Services LP ("Resurgent") sought to collect the debt on behalf of LVNV.[1]  (Doc. 8 at 63.)  Credit Control is a debt collector attempting to collect on a debt Plaintiff Tolamaa had with Citibank.[2]  (Doc. 8 at 42.)

In November 2023, Plaintiffs initiated a dispute resolution process with three consumer reporting agencies ("CRAs"): Experian Information Solutions, Inc. ("Experian"); Equifax Information Services, LLC ("Equifax"); and Trans Union, LLC ("Trans Union").  (Doc. 8 at 50–51.)  As part of the dispute resolution process, the three CRAs notified U.S. Bank to investigate and verify that the information provided to the CRAs was accurate.  (Doc. 8 at 57–58, 60.)  Plaintiffs allege U.S. Bank continued to verify inaccurate information in investigations in December 2023, February 2024, and July 2024.  (Doc. 8 at 51, 57–60.)  Plaintiffs assert that the information U.S. Bank provided to the CRAs was inconsistent and inaccurate in violation of the Fair Credit Reporting Act (the "FCRA").  (Doc. 8 at 51–60.)  Plaintiffs also assert the following state claims based on this conduct: invasion of privacy, false light, intrusion upon seclusion; respondeat superior liability; violation of the Arizona Consumer Fraud Act (the "ACFA"); violation of Arizona's civil RICO statutes; negligence per se; and negligent misrepresentation.  (Doc. 8 at 64–69.)

In fall 2024, Plaintiffs received communications from Credit Control and LVNV regarding the aforementioned debts.  (Doc. 8 at 42, 63.)  Plaintiffs allege they disputed owing any debt, requested the two Defendants cease any further communication, and yet received multiple letters or emails from Defendants in response.  (Doc. 8 at 42, 63–64.)  Plaintiffs assert Credit Control and LVNV's communications violated the Fair Debt Collection Practices Act (the "FDCPA").  (Doc. 8 at 42, 64–65.)  Plaintiffs also assert the

---

[1] LVNV does not affirm or dispute a principal/agent relationship between it and Resurgent. (Doc. 35 at 2 n.2.)  However, LVNV does contend that its arguments equally apply to both parties.  (Doc. 35 at 2 n.2.)

[2] Citibank was initially named in the lawsuit; it has since been dismissed from the case. (Doc. 41.)

following state law claims against Credit Control and LVNV based on these communications: invasion of privacy, false light, intrusion upon seclusion; respondeat superior liability; violations of the ACFA; violations of Arizona's civil RICO statutes; negligence per se; and intentional infliction of emotional distress.  (Doc. 8 at 46–50, 65–70.)

In response, each Defendant moved for dismissal pursuant to Federal Rule of Civil Procedure ("Rule")12(b)(6).[3]  Plaintiffs then filed a Motion for Leave to File a Second Amended Complaint.  (Doc. 51–52.)

## II.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2).  Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  This notice exists if the pleader sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  Plausibility does not equal "probability," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  "Where a complaint pleads facts that are 'merely consistent with' a

---

[3]  Credit Control and LVNV specifically invoke Rule 12(b)(6) in their motions to dismiss. (Doc. 16 at 1; Doc. 35 at 1.)  U.S. Bank does not specifically reference Rule 12(b)(6) in its motion, however, the motion argues Plaintiffs fail to state "a claim upon which relief can be granted," (Doc. 25 at 1), which is the gravamen of a Rule 12(b)(6) motion.

defendant's liability, it 'stops short of the line between possibility and plausibility . . . .'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In ruling on a Rule 12(b)(6) motion to dismiss, the well-pleaded factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). A court ordinarily may not consider evidence outside the pleadings when ruling on a Rule 12(b)(6) motion to dismiss. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908.

## III.  DISCUSSION

Plaintiffs bring federal and state law claims against Defendants. For the reasons below, the Court finds that Plaintiffs have failed to state a claim against any Defendant.

### A. Federal Statutory Claims

Plaintiffs bring two federal statutory claims: (1) violation of the FDCPA; and (2) violation of the FCRA. They allege Credit Control and LVNV violated the first, and U.S. Bank violated the second.

#### 1. *The FDCPA—Credit Control & LVNV*

The FDCPA prohibits abusive collection tactics by debt collectors. *See* 15 U.S.C §§ 1692–1692o. Debt collectors are strictly liable for FDCPA violations. *Clark v. Cap. Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1175 (9th Cir. 2006); *see Kaiser v. Cascade Cap., LLC*, 989 F.3d 1127, 1135 (9th Cir. 2021) ("The FDCPA makes debt collectors strictly liable for misleading and unfair debt collection practices."). "To prevail on a FDCPA claim, a plaintiff must sufficiently allege that (1) he was the object of collection activity arising from a consumer debt as defined by the FDCPA; (2) the

1  defendant is a debt collector as defined by the FDCPA; and (3) the defendant engaged in
2  an act or omission prohibited by the FDCPA." *Hamilton v. Tiffany & Bosco PA*, No.
3  CV-14-00708-PHX-GMS, 2015 WL 11120694, at *2 (D. Ariz. Feb. 10, 2015), *aff'd*, 713
4  F. App'x 674 (9th Cir. 2018).  Plaintiffs have failed to plead enough facts to establish the
5  first prong of this test.

6      "As a threshold matter, a suit brought under the FDCPA must involve a 'debt' within
7  the meaning of the statute." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).  Under
8  the FDCPA, a "debt" is an obligation incurred "primarily for personal, family or household
9  purposes."  15 U.S.C. § 1692a(5).  Thus, the FDCPA "applies to consumer debts and not
10 business loans."  *Bloom v. I.C. Sys., Inc.*, 972 F.2d 1067, 1068 (9th Cir. 1992).  When
11 making this threshold determination, "courts may look to the ostensible purpose for which
12 the obligation was entered into, but it is the funds' actual use that is paramount." *Davis v.*
13 *Hollins L.*, 968 F. Supp. 2d 1072, 1077 (E.D. Cal. 2013).

14              (i)      Plaintiffs Fail to State a Claim

15      Plaintiffs allege Credit Control and LVNV violated the following FDCPA
16 provisions: § 1692d; § 1692e(2), (5), (7), (8), (10); § 1692f(1); § 1692g(b); § 1692j; and
17 § 1692c(a)(1).  (Doc. 8 at 43, 65.)  However, Plaintiffs do not establish that the subject debt
18 is covered by the FDCPA; they do not plead any facts explaining the purpose of the debt
19 or how they used the funds.  Defendant LVNV highlights this omission in its Motion to
20 Dismiss.  (Doc. 35 at 8.)  Plaintiffs' conclusory response does not cure this apt critique:
21 "the type of debt is personal/consumer and can be inferred from the complaint."  (Doc. 42
22 at 3); *see Ashcroft*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of
23 action, supported by mere conclusory statements, do not suffice.")  Without any further
24 facts, the Court cannot "determine whether the transaction was primarily consumer or
25 commercial in nature."  *Bloom*, 972 F.2d at 1068 (citation modified); *Harper v. Collection*
26 *Bureau of Walla Walla, Inc.*, No. C06-1605-JCC, 2007 WL 4287293, at *4 (W.D. Wash.
27 Dec. 4, 2007) (stating that "[t]he FDCPA does not protect every imaginable debt").
28 Accordingly, Plaintiffs' allegations against Credit Control and LVNV fail to state a claim

1  under the FDCPA and are dismissed pursuant to Rule 12(b)(6).

2  (ii)    Plaintiffs' Standing as a Married Couple

3  As stated later in this Order, the Court grants Plaintiffs leave to amend their FDCPA

4  claims against Credit Control and LVNV.  However, both Defendants understandably

5  question Complot's standing to assert FDCPA claims on behalf of an account owned by

6  Tolamaa, and vice versa.  (Doc. 16 at 3–5; Doc. 35 at 5–6.)  A spouse has standing to assert

7  a claim under the FDCPA in certain contexts.  Here, Plaintiffs likely have such standing.

8  Generally, the FDCPA grants a cause of action to "any person" wronged by a debt

9  collector.  15 U.S.C. § 1692k(a) ("Except as otherwise provided by this section, any debt

10 collector who fails to comply with any provision of this subchapter with respect to any

11 person is liable to such person . . . ."); *see also Weinrich v. Robert E. Cole*, No. CIV. A.

12 00-2588, 2001 WL 4994, at *3 (E.D. Pa. Dec. 22, 2000) ("Federal courts interpret

13 Section 1692k(a) as a broad grant available to persons who are not obligated or allegedly

14 obligated to pay the debt that the defendant sought to collect."); *Bank v. Pentagroup Fin.,*

15 *LLC*, No. 08-CV-5293 (JG)(RML), 2009 WL 1606420, at *3 (E.D.N.Y. June 9, 2009)

16 (citing cases).  However, "[u]nder certain sections of the FDCPA, a plaintiff must be a

17 'consumer' as defined in the FDCPA to have a cause of action because those sections

18 define violations in terms of conduct directed toward a 'consumer.'"  *Weinrich*, 2001 WL

19 4994, at *4.  The FDCPA defines "consumer" as "any natural person obligated or allegedly

20 obligated to pay any debt."  § 1692a(3).  Thus, a consumer can bring any FDCPA cause of

21 action against a debt collector, but a non-consumer can only bring an FDCPA claim under

22 those sections that are generally applicable.  *See, e.g.*, *Sibersky v. Borah, Goldstein,*

23 *Altrschuler & Schwartz, P.C.*, No. 99 CIV. 3227(JGK), 2000 WL 1448635, at *5 (S.D.N.Y.

24 Sep. 28, 2000) (holding that, although the wife was the obligor of the debt, the husband

25 had standing to allege a violation of 29 U.S.C. § 1692e(5) because it is not limited to

26 consumers, but did not have standing to allege violations under § 1692e(11) and 29 U.S.C.

27 § 1692g because these provisions are consumer specific).

28 In Arizona, "debts incurred during a marriage . . . are presumed to be community

obligations that are intended to benefit the marital community." *Fleming v. Tanner*, 456 P.3d 29, 35 (Ariz. Ct. App. 2019); *see also Schlaefer v. Fin. Mgmt. Serv., Inc.*, 996 P.2d 745, 748 (Ariz. Ct. App. 2000) ("Generally, all debts incurred during marriage are presumed to be community obligations unless there is clear and convincing evidence to the contrary."). As such, "[a] creditor can seek payment of the entire community debt from either spouse." *Fleming*, 456 P.3d at 36; *Samaritan Health Sys. v. Caldwell*, 957 P.2d 1373, 1376 (Ariz. Ct. App. 1998) ("[C]ommunity debts remain the joint obligations of both parties, and a creditor can look to either spouse for satisfaction of the entire debt."). Accordingly, here, if the pertinent debts were acquired during Plaintiffs' marriage, then both Complot and Tolamaa are equally obligated to pay the debt and should be considered consumers under the FDCPA. *See Crafton v. L. Firm of Jonathan B. Levine*, 957 F. Supp. 2d 992, 1001 (E.D. Wis. 2013) (finding that a spouse had standing to bring an FDCPA claim against a debt collector as a consumer, though they were not the named obligor on the debt, because the debt was acquired after the couple married and thus the spouse was obligated to pay the debt because it was considered a community obligation under Wisconsin law); *see also Olson v. Armada Corp.*, No. C20-0429JLR, 2021 WL 4948189, at *1, 6 (W.D. Wash. Oct. 22, 2021) (holding that a debt collector does not violate the FDCPA by bringing a debt collection action against a wife, though the husband was the named obligor, because in Washington all debt incurred in a marriage is considered community debt).

Here, Plaintiffs have not alleged whether the pertinent debts were acquired in their marriage. The Court waits to address Plaintiff's standing further should they address this deficiency in their Second Amended Complaint.

### 2. *The FCRA—U.S. Bank*

Congress enacted the FCRA "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). The FCRA regulates CRAs and those furnishing information to CRAs. 15 U.S.C. § 1681(b); § 1681s-2. A furnisher has a duty to report

accurate information to CRAs and investigate consumer disputed information when a CRA notices the furnisher of the dispute.  § 1681s-2(a), (b).  Plaintiffs allege U.S. Bank, a furnisher, violated § 1681s-2(b).  (Doc. 8 at 60.)

"The purpose of § 1681s-2(b) is to require furnishers to investigate and verify that they are in fact reporting complete and accurate information to the CRAs after a consumer has objected to the information in his file."  *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1164 (9th Cir. 2009).  After conducting a reasonable investigation, "the furnisher must correct or delete inaccurate information."  *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1251 (9th Cir. 2022).  However, before a court considers the reasonableness of the furnisher's procedures, the consumer must make a prima facie showing of inaccuracy in the credit report.  *See id.*  "[I]f there is no inaccuracy, then the reasonableness of the investigation is not in play."  *Id.*

In sum, to establish a claim under § 1682s-2(b), a plaintiff must show "(1) a credit reporting inaccuracy existed on plaintiff's credit report; (2) plaintiff notified the consumer reporting agency that plaintiff disputed the reporting as inaccurate; (3) the consumer reporting agency notified the furnisher of the alleged inaccurate information of the dispute; and (4) the furnisher failed to investigate the inaccuracies or further failed to comply with the requirements in 15 U.S.C. 1681s-2(b)(1)(A)–(E)."  *Clifford v. LexisNexis Risk Data Mgmt. LLC*, No. CV-21-01145-PHX-DJH, 2023 WL 2478864, at *5 (D. Ariz. Mar. 13, 2023).  U.S. Bank argues Plaintiffs have failed to establish the first prong of this test.  The Court agrees.

"[I]nformation is inaccurate for purposes of 15 U.S.C. § 1681s-2(b) where it either is 'patently incorrect' or is 'misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.'"  *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 756 (9th Cir. 2018) (quoting *Gorman*, 584 F.3d at 1163).  In evaluating an alleged inaccuracy, the Court views the report as a whole.  *Sanchez v. JPMorgan Chase Bank NA*, 643 F. Supp. 3d 1025, 1033–34 (D. Ariz. 2022) (citing cases).  Ultimately, a plaintiff must present a "bona fide dispute" of the reported information.  *Gorman*, 584 F.3d at 1163; *see*

*also Sanchez*, 643 F. Supp. 3d at 1033 ("[I]nformation is only materially misleading when it is 'open to an interpretation that is directly contradictory to the true information.'" (quoting *Gross v. Private Nat'l Mortg. Acceptance Co.*, 512 F. Supp. 3d 423, 427 (E.D.N.Y. 2021))).

Here, Plaintiffs allege a litany of inaccuracies. The Court finds that all, except one, fail to establish an inaccuracy.

(i)    Insufficient Inaccuracy Claims

Plaintiff Complot argues U.S. Bank inaccurately reported his debt as past due in July 2023 because it was past due in June 2023. (Doc. 8 at 51.) Plaintiff's attached report cuts against this claim. The report states Plaintiff made a $30 payment on June 20, 2023. (Doc. 8 at 56.) Plaintiff did not make a payment in July 2023. (Doc. 8 at 56.) Therefore, the payment was not thirty days past due till July 2023. Therefore, the past due information is not inaccurate and this is not a bona fide dispute.

Plaintiff argues U.S. Bank inaccurately reported his debt payments as "Current/Terms met" in May and June 2023, though the billing history showed he owed $40 in May and paid zero and owed $97 in June and only paid $30. (Doc. 8 at 56.) Ultimately, Plaintiff argues the report should have stated he was delinquent in May rather than "Current/Terms met." However, Plaintiff has not pleaded any facts showing it is patently incorrect for the report to say terms were met. Plaintiff did not owe a balance on the U.S. Bank credit card till May 2023. (Doc. 8 at 56.) He then made a payment in June 2023. (Doc. 8 at 56.) It is entirely possible the June payment counted towards the $40 payment owed in May, so any delinquency was not fully reported till Plaintiff failed to make any payment in July 2023. Without Plaintiff explaining the terms of the debt, or the terms of the payment schedule, the report is not patently incorrect. At most, the report is vague, not inaccurate, because Plaintiff does not dispute the reported billing history. *See Sanchez*, 643 F. Supp. 3d at 1033 ("When assessing the accuracy of a report, it should be noted that not every misstatement constitutes an inaccuracy."). Moreover, the information is not misleading because a two-month delay in recognizing a delinquency benefits

1  Plaintiff rather than adversely affecting his credit.  *See Shaw*, 891 F.3d at 756.
2  Accordingly, this is not a bona fide dispute.

3      Plaintiff argues the report is inaccurate because it does not include the date of first
4  delinquency ("DOFD").  (Doc. 8 at 51.)  However, there is no evidence that failure to
5  include this information is U.S. Bank's fault, legally relevant, or sufficient to establish an
6  inaccuracy.  *See Gadson v. Experian Info. Sols., Inc.*, No. 2:23-CV-00029-BHH-MHC,
7  2024 WL 3745476, at *7 (D.S.C. July 18, 2024), *report and recommendation adopted*, No.
8  2:23-CV-29-BHH, 2024 WL 3742464 (D.S.C. Aug. 9, 2024) ("[T]o the extent Plaintiff is
9  asserting that Defendant should have identified on the consumer report the DOFD for each
10  account, Plaintiff has not pointed to any law requiring Defendant to expressly include that
11  information in the report, nor has she shown that its omission makes the report patently
12  incorrect or misleading in such a way and to such an extent that it can be expected to have
13  an adverse effect, particularly where the reported payment history is correct." (citation
14  modified)).  Accordingly, this is not a bona fide dispute.

15      Plaintiff argues U.S. Bank inaccurately reports scheduled payments because the
16  account is "closed."  (Doc. 8 at 52.)  However, the scheduled payments are listed in the
17  "Balance Histories" of the report, rather than as upcoming payments due.  (Doc. 8 at 56.)
18  Additionally, although U.S. Bank eventually closed the account, it is not inaccurate for it
19  to report the account's payment history.  *See Sanchez*, 643 F. Supp. 3d at 1036 (finding a
20  closed account's past due report was part of a "historical pay status" and thus not inaccurate
21  because it did not represent the current state of the account).  Accordingly, this is not a
22  bona fide dispute.

23      Plaintiff argues U.S. Bank inaccurately reports a balance due of $2,065 because it
24  charged-off $1,711 from the account.  (Doc. 8 at 57.)  Plaintiff misunderstands what
25  charged-off means.  A charge-off is "the declaration by a creditor (usually a credit card
26  account) that an amount of debt is unlikely to be collected.  This occurs when a consumer
27  becomes severely delinquent on a debt."  *Williams v. Equifax Info. Servs., LLC*, No. ED
28  CV18-02457 JAK (SHKx), 2019 WL 3243737, at*3 n.3 (C.D. Cal. May 6, 2019).  "But

charging off a debt does not diminish the legal right of the original creditor to collect the full amount of the debt." *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1298 (11th Cir. 2016). Put simply, "charged off debt is not forgiven." *Leblanc v. Unifund CCR Partners*, 601 F.3d 1185, 1188 n.5 (11th Cir. 2010). Thus, it is accurate for U.S. Bank to still report a balance due because it has a right to collect on the debt. *See Christian v. Equifax Info Servs., LLC*, No. 18-13682, 2020 WL 2087869, at *4 (E.D. Mich. Apr. 30, 2020) (explaining that "charging off" an account "does not discharge the debt or eliminate the debtor's payment obligations on the account"). Accordingly, this is not a bona fide dispute.

Finally, Plaintiff argues that U.S. Bank inaccurately reports any balance due because of an alleged "JAN and JUNE 2024 accord and satisfaction." (Doc. 8 at 57.) Plaintiff does not allege any facts in support of this contention. Therefore, the Court cannot take this as true; this is not a well-pleaded factual allegation. *Cousins*, 568 F.3d at 1067. In Arizona, an "accord and satisfaction discharges a contractual obligation or cause of action when the parties agree to exchange something of value in resolution of a claim or demand and then perform on that agreement, the accord being the agreement, and the satisfaction its execution or performance." *Abbott v. Banner Health Network*, 372 P.3d 933, 937 (Ariz. 2016) (quoting *Best Choice Fund, LLC v. Low & Childers, P.C.*, 269 P.3d 678, 686 (Ariz. Ct. App. 2011)). Plaintiff has not asserted any facts demonstrating an agreement with U.S. Bank where something of value was exchanged in resolution of their debt and a subsequent execution of that agreement. Moreover, in seeming concession that he did not enter an accord and satisfaction with U.S. Bank, Plaintiff also states he entered an accord and satisfaction with LVNV who was collecting on the U.S. Bank debt. (Doc. 8 at 64.)

Therefore, Plaintiff has not demonstrated an inaccuracy in the report because he has not sufficiently alleged an accord and satisfaction of his debt, and any efforts to do so are inconsistent and illogical. *See Gens v. Wachovia Mortg. Corp.*, No. 10-CV-01073-LHK, 2011 WL 1791601, at *5 (N.D. Cal. May 10, 2011), *aff'd*, 503 F. App'x 533 (9th Cir. 2013) (dismissing with prejudice a complaint that remains "internally inconsistent, conclusory,

1    and insufficient to state a claim").  Accordingly, this is not a bona fide dispute.

2                        (ii)    Sufficient Inaccuracy Claim

3    Plaintiff argues that U.S. Bank failed to report a $100 payment in January 2024.

4    (Doc. 8 at 58.)  Because of this omission, Plaintiff alleges U.S. Bank inaccurately reports

5    the date of last payment as June 2023 and inaccurately calculates the total balance on the

6    debt. (Doc. 8 at 58.)  The Court must assume these allegations are true.  *Cousins*, 568 F.3d

7    at 1067.  Therefore, Plaintiff has alleged an inaccuracy in U.S. Bank's report.  However,

8    as U.S. Bank points out, the Court is dubious of Plaintiff's Article III standing as to this

9    inaccuracy.  (Doc. 25 at 7–8.)

10                        (iii)    Plaintiffs' Standing

11    To have standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is

12    fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be

13    redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338

14    (2016).  As noted, the $100 omission is the only bona fide dispute alleged.  Thus, any

15    alleged injuries must be fairly traceable to this inaccuracy.  The Court finds Plaintiff has

16    not satisfied this jurisdictional burden.

17    Plaintiff assert's the following injuries: negative credit rating, restricted access to

18    further credit, restricted credit for mortgage housing, inability to cosign, marital strain, loss

19    of consortium, hedonic damages, sleeplessness, and "nervousness by the constant and

20    looming inaccurate information."  (Doc. 8 at 61.)  These damages are not fairly traceable

21    to the alleged $100 discrepancy.  "A plaintiff's injury is 'fairly traceable' when there is a

22    'substantial likelihood' that the defendant's conduct caused the harm."  *Baton v. Ledger*

23    *SAS*, 740 F. Supp. 3d 847, 879 (N.D. Cal. 2024) (quoting *NRDC v. Texaco Refin. & Mktg.,*

24    *Inc.*, 2 F.3d 493, 505 (3rd Cir. 1993)).  Plaintiff's alleged injuries are substantially caused

25    by his uncontested, consistent failure to pay off his debt.  This is evidenced by his

26    concession that his debt with U.S. Bank was "charged off."  (Doc. 8 at 57.)

27    A charge off "is one of the most adverse factors that can be listed on a credit report."

28    *Artemov v. TransUnion, LLC*, NO. 20-CV-1892 (BMC), 2020 WL 5211068, at *4

(E.D.N.Y Sep. 1, 2020) (quoting *Hanks v. Talbots Classics Nat. Bank*, No. C 12-2612 SI, 2012 WL 3236323, at *1 n.2 (N.D. Cal. Aug. 6, 2012)).  Such designation is considered "a derogatory entry in your credit file—a serious negative event—and it can adversely affect your credit scores and your ability borrow additional funds." *Id.*  Plaintiff does not dispute the charge off on his account.  (Doc. 8 at 57, 59, 60.)  Additionally, Plaintiff does not dispute his consistent failure to satisfy scheduled payment deadlines; he even contends U.S. Bank should have marked him delinquent sooner than initially reported.  (Doc. 8 at 51.) Thus, the alleged injuries to his credit score, ability to take out future credit, and subsequent emotional distress, are substantially caused by, and fairly traceable to, the foregoing concessions—not the alleged omission of a $100 payment.  *See Spokeo*, 578 U.S. at 342 ("[N]ot all [FCRA] inaccuracies cause harm or present any material risk of harm."). Accordingly, Plaintiffs would have suffered the same alleged injuries regardless of this claimed $100 omission.  *See Artemov*, 2020 WL 5211068, at *7 (granting a motion to dismiss after finding that the plaintiff could not show the causation element of standing for an inaccuracy under the FCRA because "the alleged inaccuracy could not have made a difference: in either case, the denial of credit was going to happen").

For the foregoing reasons, the Court grants U.S. Bank's Motion to Dismiss because Plaintiff Complot has either failed to state a claim under the FCRA or failed to establish Article III standing for the remaining inaccuracy claim.  The Court, therefore, dismisses Plaintiff Complot's FCRA claims against U.S. Bank with prejudice because he cannot cure the above deficiencies by alleging new facts.  The Court now turns to Plaintiff Complot and Tolamaa's state claims.

### B.  State Claims

Plaintiffs bring six state common law and statutory claims against Defendants: (1) invasion of privacy, false light, and intrusion upon seclusion; (2) respondeat superior; (3) violation of the ACFA; (4) violation of Arizona's civil RICO statutes; (5) negligence per se; and (6) intentional infliction of emotional distress.  The first five claims are asserted against all Defendants, but the sixth claim is only brought against Credit Control and

LVNV.

However, where Plaintiffs' state claims against U.S. Bank derive from conduct falling under § 1681s-2 of the FCRA, they are preempted.  *See Reaser v. Monterey Fin. Servs., LLC*, No. CV-20-01693-PHX-SPL, 2020 WL 5879523, at *2 (D. Ariz. Oct. 2, 2020) ("FCRA § 1681t(b)(1)(F) provides that § 1681s-2 preempts certain state law claims . . . Most importantly, this Court has held that § 1681t(b)(1)(F) completely preempts a state common law cause of action where the conduct giving rise to the claim falls under § 1681s-2."); *see also Fierros v. Quebedeaux Buick GMC Inc.*, No. CV-20-00245-TUC-RM (MSA), 2020 WL 8673974, at *2–3 (D. Ariz. Nov. 24, 2020), *report and recommendation adopted*, 2021 WL 763811 (D. Ariz. Feb. 26, 2021) (holding that "§ 1681t(b)(1)(f) preempts, without exception, all state statutory and common-law claims relating to the responsibilities of furnishers of information").  Plaintiffs allege their state claims arise from U.S. Bank's failure to identify and remedy alleged inaccuracies in their credit reports.  (Doc. 8 at 62, 65–69.)  Therefore, these claims are preempted.  Accordingly, the Court dismisses with prejudice all of Plaintiffs' state claims against U.S. Bank.

However, the FDCPA does not preempt state law claims.  *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1067 (9th Cir. 2011) ("[T]he FDCPA does not pre-empt consistent state action, including cumulative recovery of statutory damages under state law.").  Accordingly, the Court will consider all six state claims brought against Credit Control and LVNV.  The Court finds Plaintiffs fail to state a claim for all six counts.

### 1. *Invasion of Privacy, False Light, and Intrusion Upon Seclusion*

Under Arizona law, "[a] claim for intrusion upon seclusion or invasion of privacy requires the Plaintiff to prove: (i) an intentional intrusion, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns; and (ii) that the intrusion would be highly offensive to a reasonable person."  *Davis v. HDR Inc.*, 652 F. Supp. 3d 1087, 1097 (D. Ariz. 2023) (citing *Hart v. Seven Resorts, Inc.*, 947 P.2d 846, 853 (Ariz. Ct. App. 1997)).  Similarly, a claim for false light requires the Plaintiff to prove "the

defendant knowingly or recklessly published false information or innuendo about the plaintiff that a reasonable person would find highly offensive." *Hart*, 947 P.2d at 854.

Plaintiffs allege the foregoing claims against Credit Control and LVNV because they had "no rights to communicate with plaintiffs because the debt was settled and because the plaintiffs notified them with a refusal to pay." (Doc. 8 at 46, 66.) Specifically, Plaintiffs state Credit Control sent them three letters after they sent a cease-and-desist notification. (Doc. 8 at 42.) Credit Control admits to these communications. (Doc. 16 at 7.) As to LVNV, Plaintiffs allege the company sent them two emails after receiving their and desist notification. (Doc. 8 at 64.) Yet, Plaintiffs do not allege the letters, or emails, contained heinous or egregious content; they contend the communications themselves are the source of offense. The Court finds that such contact is not highly offensive to a reasonable person.

In a similar context, "[w]ith respect to creditor collection calls, the Restatement specifically states: 'it is only when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence, that his privacy is invaded.'" *Shupe v. Capital One Bank USA NA*, No. CV-16-00571-TUC-JGZ, 2017 WL 11112432, at *2 (D. Ariz. Dec. 22, 2017) (quoting Restatement (Second) of Torts §§ 652A–B (A.L.I. 1977)) (finding "twice daily phone calls, while frustrating, would not amount to a course of hounding so severe as to constitute a substantial burden to a reasonable person's existence"). Three debt collection letters do not amount to severe hounding. *See Pucillo v. Nat'l Credit Sys., Inc.*, 66 F.4th 634, 640 (7th Cir. 2023) ("And while courts have allowed intrusion upon seclusion liability for irritating intrusions, there is nothing inherently bothersome, intrusive, or invasive about a collection letter delivered via U.S. Mail. Indeed, a letter is the means of contact in many if not most of our FDCPA cases." (citation modified)). Therefore, the Court dismisses these claims against Credit Control and LVNV with prejudice because Plaintiffs cannot cure these deficiencies by alleging new facts.

1        2.  *Respondeat Superior*

2      "In Arizona, an employer may be held vicariously liable under the doctrine of

3    respondeat superior for the negligent acts of its employee acting within the course and

4    scope of employment."  *Engler v. Gulf Interstate Eng'g, Inc.*, 258 P.3d 304, 309 (Ariz. Ct.

5    App. 2011), *aff'd*, 280 P.3d 599 (2012).

6      Plaintiffs allege Credit Control and LVNV allowed employees to "negligently and

7    intentionally prepare, report, and communicate false, fictitious, misleading, and logically

8    inconsistent information." (Doc. 8 at 47, 67.)  Additionally, they allege the two Defendants

9    "negligently, wantonly, and intentionally hired, trained, retained, or supervised

10   incompetent agents, who were allowed, or encouraged to violate the law as was done to

11   Plaintiffs." (Doc. 8 at 47.)  Plaintiffs do not support these conclusory statements with any

12   concrete facts; they have not alleged or established that it is negligent to send a debt

13   collection letter or email.  Thus, Plaintiffs have not sufficiently stated a claim for

14   respondeat superior.  The claims are dismissed with prejudice because Plaintiffs cannot

15   cure these deficiencies by alleging new facts.

16       3.  *Arizona Consumer Fraud Act*

17     "The elements of an ACFA violation are 'a false promise or misrepresentation made

18   in connection with the sale or advertisement of merchandise and the hearer's consequent

19   and proximate injury.'"  *Rich v. Bank of Am., N.A.*, 666 F. App'x 635, 638 (9th Cir. 2016)

20   (citing *Dunlap v. Jimmy GMC of Tucson, Inc.*, 666 P.2d 83, 87 (Ariz. Ct. App. 1983)).  "An

21   injury occurs when a consumer relies, even unreasonably, on false or misrepresented

22   information."  *Rich v. BAC Home Loans Servicing LP*, No. CV-11-00511-PHX-SRB, 2013

23   WL 10104612, at *3 (D. Ariz. Dec. 13, 2013) (citing *Kuehn v. Stanley*, 91 P.3d 346, 351

24   (Ariz. Ct. App. 2004)).  "Because ACFA claims involve allegations of fraud, they must be

25   pled with particularity."  *Id.*

26     Plaintiffs allege Credit Control and LVNV violated the ACFA because they

27   "advertised" false collection obligations "with each debt collection communication."

28   (Doc. 8 at 48, 68.)  Yet, Plaintiffs do not allege any facts suggesting Credit Control or

1    LVNV attempted to sell or advertise any merchandise; they only critique Credit Control's

2    three debt collection letters, and LVNV's two emails.  (Doc. 8 at 42.)  This is insufficient

3    to sustain a claim under the ACFA.  *See D'Agostino v. Comenity Cap. Bank*, No.

4    CV-24-00728-PHX-SPL, 2025 WL 69373, at *8 (D. Ariz. Jan. 10, 2025) (dismissing with

5    prejudice an AFCA claim against a debt collector because "[d]efendants' alleged

6    conduct—none of which is related to any sale or advertisement of merchandise—is plainly

7    outside of the scope of the statute").  The claims are dismissed with prejudice because

8    Plaintiffs cannot cure these deficiencies by alleging new facts.

9                    4.  *Arizona RICO*

10       Arizona's Organized Crime, Fraud and Terrorism Act, also known as Arizona's

11   racketeering or "RICO" statute, provides a private cause of action for a "person who

12   sustains reasonably foreseeable injury to his person, business or property by a pattern of

13   racketeering activity."  A.R.S. § 13-2314.04(A).  Arizona's RICO Act defines racketeering

14   as "(1) an act (2) 'that would be punishable by imprisonment for more than one year under

15   the laws of this state . . . regardless of whether the act is charged or indicted,'

16   (3) 'involv[ing]' any one of a number of enumerated offenses (4) 'committed for financial

17   gain.'"  *State, ex rel. Horne v. Campos*, 250 P.3d 201, 208 (Ariz. Ct. App. 2011) (alteration

18   in original) (quoting Ariz .Rev .Stat. § 13-2301(D)(4)).  Here, the alleged enumerated

19   offense is "[a] scheme or artifice to defraud." (Doc. 8 at 48); *see* § 13-2301(D)(4)(b)(xx).

20   Finally, a "pattern of racketeering activity," as applicable here, means at least two acts of

21   racketeering where (1) "[t]he last act of racketeering activity that is alleged as the basis of

22   the claim occurred within five years of a prior act of racketeering"; (2) "[t]he acts of

23   racketeering . . . were related to each other or to a common external organizing principle";

24   and (3) "[t]he acts of racketeering were continuous or exhibited the threat of being

25   continuous."  *See* § 13-2314.04 (T)(3)(a)(i)–(iii).

26       In addition to establishing the foregoing elements, Plaintiffs must state their RICO

27   claim "with particularity" because they allege fraud.  *See* § 13-2314.04 ("If any pleading,

28   motion or other paper includes an averment of fraud or coercion, it shall state these

circumstances with particularity with respect to each defendant."); *see also* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). In other words, Plaintiffs must specifically state "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Coopper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

Plaintiffs allege Credit Control and LVNV "engaged in a pattern of unlawful activities such as a scheme to defraud" by "seeking payment on discharged debt" "for the purpose of financial gain." (Doc. 8 at 49, 68–69.) Plaintiffs do not support these conclusory allegations with any substantive facts. The only fact in support of this alleged "scheme to defraud" is the claim that Credit Control and LVNV sought payment on a discharged debt. First, this scant accusation does not satisfy Plaintiffs' particularity burden; it does not describe the "who, what, when, where, and how" of this alleged scheme. *See Vess*, 317 F.3d at 1106. Second, Plaintiffs do not allege a continuous pattern of racketeering activity—they only claim Credit Control sent them three letters and LVNV sent them two emails. *See Lifeflite Med. Air Transp., Inc. v. Native Am. Air Servs., Inc.*, 7 P.3d 158, 162 (Ariz. Ct. App. 2000) (interpreting "continuous" in § 13-2314.04(T)(3)(a)(iii) "to require that the related predicate acts extend 'over a substantial period of time,' i.e., over more than 'a few weeks or months.'" (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242 (1989)). Plaintiffs do not allege any facts to show Credit Control and LVNV's communications persisted longer than a few weeks or months.

Finally, even if Plaintiffs' allegations are true, it is not unlawful for a debt collector to seek payment on a discharged debt. *Randolph v. IMBS, Inc.*, 368 F.3d 726, 729 (7th Cir. 2004) ("Courts do not impute to debt collectors other information that may be in creditors' files—for example, that debt has been paid or was bogus to start with. This is why debt collectors send out notices informing debtors of their entitlement to require verification and to contest claims.") Thus, Plaintiffs fail to establish that Credit Control or LVNV

engaged in an act punishable by imprisonment for more than one year.  For these reasons, the Court dismisses these claims with prejudice because Plaintiffs cannot cure these deficiencies by alleging new facts.

### 5. *Negligence Per Se*

"Under Arizona law, negligence per se is not a cause of action separate from common law negligence, but, instead, is a doctrine under which a party can establish the duty and breach elements of a negligence claim based on a violation of a statute that supplies the relevant duty of care." *Estados Unidos Mexicanos v. Diamondback Shooting Sports Inc.*, No. CV-22-00472-TUC-RM, 2024 WL 1256038, at *14 (D. Ariz. Mar. 25, 2024) (citation modified).

Plaintiffs allege Credit Control and LVNV "violated a statute created for the public which is negligence per se."  (Doc. 8 at 49, 69.)  Plaintiffs do not state which statute.  However, Plaintiffs claim Credit Control and LVNV "did this in furtherance of their business as abusive debt collectors who disregard consumer protection laws."  (Doc. 8 at 49, 69.)  So, the Court presumes Plaintiffs mean the AFCA.  Because the Court dismissed Plaintiffs' AFCA claim against Credit Control and LVNV with prejudice, it likewise dismisses with prejudice their negligence per se claims under this statute because Plaintiffs cannot cure these deficiencies by alleging new facts.

### 6. *Intentional Infliction of Emotional Distress*

Under Arizona law, the "tort of intentional infliction of emotional distress ["IIED"] requires" (1) "proof of extreme and outrageous conduct by the defendant"; (2) "defendant's intent to cause emotional distress or reckless disregard of the near certainty that such distress will result from defendant's conduct"; and (3) "resulting severe emotional distress." *Wallace v. Casa Grande Union High Sch. Dist. No. 82 Bd. of Governors*, 909 P.2d 486, 495 (Ariz. Ct. App. 1995).  "Extreme and outrageous conduct is conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Christakis v. Deitsch*, 478 P.3d 241, 245 (Ariz. Ct. App. 2020) (citation

modified).

Plaintiffs allege Credit Control and LVNV "willfully failed to inquiry [sic] about the representations made to plaintiff in their attempts to collect and intentionally caused mental/physical distress by continuing communication after a refusal to pay." (Doc. 8 at 65.) Moreover, they state "[t]he acts by the defendants are so far out of the realm of reasonable it could only be considered an intentional act to inflict distress on Plaintiffs because the account was legally discharged." (Doc. 8 at 65.)

First, as noted above, it is not unlawful for Credit Control to seek payment on a discharged debt. *See Randolph*, 368 F.3d at 729. Thus, Credit Control and LVNV did not act unreasonably by attempting to collect on the account. Second, Credit Control's three debt collection letters, or LVNV's two emails, do not amount to outrageous conduct. In *Midas Muffler Shop v. Ellison*, 650 P.2d 496 (Ariz. Ct. App. 1982), the Arizona court of appeals found that debt collector—mistakenly seeking collection on a paid debt—did not engage in extreme and outrageous conduct to permit recovery under IIED when it called six times over a period of three months, and during some of those phone calls, told the plaintiffs they were "no better than lying thieves or sponges" and that they would "sue your asses" or "sue the hell out of you." *Id.* at 498, 500. The court explained that the debt collector's language was not "so atrocious as to be utterly intolerable in a civilized community" because

> liability clearly does extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind.

*Id.* (quoting Restatement (Second) of Torts § 46 cmt. d (A.L.I. 1965). Thus, it cannot be said that three letters—without any allegations of profanity or threats of litigation—amount to outrageous conduct.

Finally, Plaintiffs' emotional damages are not severe. Arizona courts have "uniformly insisted that the emotional distress suffered be *severe*." *Id.* at 500–01(emphasis

in original).  Courts draw a line between conduct causing emotional distress and that causing severe emotional distress.  *Id.* at 501 (citing cases giving examples such as heart attack from nervous exhaustion, fright induced premature birth, writhing in bed in hysteria, and hospitalization for anxiety).  In *Midas*, the court found that the plaintiff's testimony that phone calls "upset her and made her cry, and that she had difficulty sleeping on several occasions after the calls were made" was not "sufficiently severe to warrant the imposition of liability for [IIED]."  *Id.*  The court explained, "[i]it is only where it is extreme that the liability arises.  Complete emotional tranquility is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people."  *Id.* (quoting Restatement (Second) of Torts § 46 cmt. J (A.L.I. 1965)).

Here, Plaintiffs allege they "suffered severe physical and emotional distress as alleged throughout the complaint" and "martial distress by proximity."  (Doc. 8 at 65.)  These conclusory statements are ineffective against a Rule 12(b)(6) motion.  *See Ashcroft*, 556 U.S. at 678.  Thus, Plaintiffs have not alleged any facts demonstrating they have suffered severe emotional distress.  Accordingly, the Court dismisses these claims with prejudice because Plaintiffs cannot cure these deficiencies by alleging new facts.

## IV.    LEAVE TO FILE A SUR-REPLY AND LEAVE TO AMEND

In response to Defendants' motions to dismiss, Plaintiffs filed two motions: (1) a Motion for Leave to File a Sur-Reply to LVNV's reply in support of its Motion to Dismiss; and (2) a Motion for Leave to File a Second Amended Complaint.  (Doc. 44; Docs. 51–52.)  The Court dismisses the first, and grants in part the second.

### A. Motion for Leave to File a Sur-Reply

"Neither Fed. R. Civ. P. 7 nor the local rules of practice for this District provide for the filing of a sur-reply, and sur-replies are not authorized by any other rules of procedure absent express prior leave of the Court."  *Briggs v. Montgomery*, No. CV-18-02684-PHX-EJM, 2019 WL 13039282, at *2 (D. Ariz. Mar. 19, 2019).  Instead, they are permissible "when a party raises new issues or new evidence in a reply brief."  *Id.* (quoting *ML Liquidating Tr. v. Mayer Hoffman McCann P.C.*, No. 2:10-CV-02019-RRB,

2011 WL 10451619, at *1 (D. Ariz. Mar. 11, 2011)).  But they are "generally discouraged" and are permitted only "in the most extraordinary circumstances."  *ML Liquidating Tr.*, 2011 WL 10451619, at *1.

Here, Plaintiffs allege LVNV raises: (1) new arguments regarding the elements of accord and satisfaction; (2) new evidence of Plaintiffs' other lawsuits; and (3) new characterization of Plaintiffs' motives.  (Doc. 44 at 1–4.)  The Court disagrees.

First, Plaintiffs claim their debt was extinguished by an alleged accord and satisfaction in their FAC.  (Doc. 8 at 64.)  Thus, LVNV's reply is responsive to this claim and does not raise a novel issue.  Second, whether the Plaintiff's other lawsuits and LVNV's characterization of Plaintiffs' motives amount to new evidence or not, the Court has not considered the information in issuing this order so a sur-reply is unnecessary.  *See Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) ("[W]here new evidence is presented in a reply to a motion for summary judgment, the district court should not consider the new evidence without giving the non-movant an opportunity to respond." (citation modified)).  Accordingly, the Court dismisses Plaintiffs' Motion for Leave to File a Sur-Reply.

### B.  Motion for Leave to File a Second Amended Complaint

"[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citation modified).  The Court only grants Plaintiffs leave to amend their FDCPA claims against Credit Control and LVNV.  The Court *does not* grant Plaintiff Complot leave to amend his FCRA claims against U.S. Bank.  Additionally, the Court *does not* grant Plaintiffs leave to amend their state claims against U.S. Bank, Credit Control, and LVNV.  The Court dismisses the FCRA claims and all state claims with prejudice as discussed above.

Plaintiffs have lodged their Proposed Second Amended Complaint with the Court.  (Doc. 52.)  However, the proposed amendment does not cure the deficiencies highlighted herein.  Therefore, the Court suggests Plaintiffs' draft a new second amended complaint

that is responsive to this order.

Plaintiffs' amended complaint must follow the form detailed in Rule 7.1 of the Local Rules of Civil Procedure. Within thirty (30) days from the date of entry of this Order, Plaintiffs may submit their second amended complaint. Plaintiffs must clearly designate on the face of the document that it is the "Second Amended Complaint." The amended complaint must be retyped or rewritten in its entirety and may not incorporate any part of the original Complaint by reference.

The Court draws attention to the District of Arizona's Federal Court Advice Only Clinic, Federal Court Advice Only Clinic - Phoenix | District of Arizona | United States District Court (uscourts.gov). The Court also notes the E-Pro Se program which assists litigants with creating a complaint form, Welcome - eProSe (uscourts.gov). Lastly, the Court advises Plaintiff that certain resources for self-represented parties, including a handbook and the Local Rules, are available on the Court's website, www.azd.uscourts.gov, by following the link "For Those Proceeding Without an Attorney."

## V.    CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Credit Control's Motion to Dismiss is **granted** (Doc. 17).

**IT IS FURTHER ORDERED** that Defendant U.S. Bank's Motion to Dismiss is **granted** (Doc. 25).

**IT IS FURTHER ORDERED** that Defendant LVNV's Motion to Dismiss is **granted** (Doc. 35).

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to File Sur-Reply is **denied** (Doc. 44).

…

…

…

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to File a Second Amended Complaint is **granted in part** as to the FDCPA claims against Credit Control and LVNV only (Doc. 51).

Dated this 26th day of September, 2025.

Honorable Susan M. Brnovich
United States District Judge