**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Oliver Complot and Corina Tolamaa, | No. CV-25-00255-PHX-SMB |
| Plaintiffs, | **ORDER** |
| v. | |
| Credit Control, LLC and LVNV Funding LLC, | |
| Defendants. | |

Before the Court is Plaintiffs' Motion for Reconsideration of the Court's order granting Defendants' Motions to Dismiss (Doc. 58).  Also pending are Defendants LVNV Funding, LLC's and Credit Control, LLC's Motions to Dismiss Plaintiffs' Second Amended Complaint ("SAC") (Docs. 60, 62).  The Court **denies** Plaintiffs' Motion and **grants in part and denies in part** Defendants' Motions for the following reasons.

## I.    BACKGROUND

This Court's prior order dismissed with prejudice Plaintiffs' state claims against all Defendants and Plaintiffs' individual claims against U.S. Bank. (Doc. 57 at 22.)  The Court only granted Plaintiffs leave to amend their Fair Debt Collection Practices Act ("FDCPA") claims against LVNV and Credit Control.  (*Id.*)  Plaintiffs have since filed a Motion for Reconsideration and their SAC.  (Docs. 58, 59.)  The remaining Defendants again move to dismiss.  (Docs. 60, 62.)

## II.    LEGAL STANDARD

### A.  Motion for Reconsideration

"The Court has discretion to reconsider and vacate a prior order." *Motorola, Inc. v. J.B. Rodgers Mech. Contractors*, 215 F.R.D. 581, 582 (D. Ariz. 2003).    However, "[m]otions for reconsideration are disfavored," *id.*, and "are appropriate only in rare circumstances." *333 W. Thomas Med. Bldg. Enters. v. Soetantyo*, 976 F. Supp. 1298, 1302 (D. Ariz. 1995).    Accordingly, "[a] motion for reconsideration should not be used to ask the court to rethink what the court had already thought through—rightly or wrongly." *Id.* (citation modified).    Instead, these motions are only appropriate where the Court: "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust"; (3) is presented with "an intervening change in controlling law"; or (4) is otherwise presented with "other, highly unusual, circumstances warranting reconsideration." *Sch. Dist. No. 1J Multnomah Cnty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

### B.  Motion to Dismiss

To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2).    Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).    This notice exists if the pleader sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).    "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).    A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains sufficient factual

matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Plausibility does not equal "probability," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility . . . .'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In ruling on a Rule 12(b)(6) motion to dismiss, the well-pleaded factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). A court ordinarily may not consider evidence outside the pleadings when ruling on a Rule 12(b)(6) motion to dismiss. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908.

## III.    DISCUSSION

### A. Motion for Reconsideration

The Court first addresses Plaintiffs' Motion for Reconsideration. Plaintiffs argue the Court committed clear error by dismissing their Fair Credit Reporting Act ("FCRA") claims against U.S. Bank, and finding their accord and satisfaction argument insufficient. (Doc. 58 at 1.) The Court finds it did not err in either respect. The Court reviewed its Order and finds that it did not err in concluding that Plaintiffs failed to show that U.S. Banks' reporting was patently incorrect or misleading in violation of the FCRA.

The Court rejected Plaintiffs' accord and satisfaction arguments because Plaintiffs failed to allege any facts in support of this contention. Plaintiffs disagree and aver the Court overlooked specific allegations in their First Amended Complaint ("FAC"). To

evidence this, Plaintiffs' Motion presents two alleged quotes from paragraphs 75 and 76 of their FAC (Doc. 8). These "quotes," however, do not exist. The Court compares Plaintiffs' fabricated quotes with what actually appears in paragraphs 75 and 76 of the FAC.

| Fabricated Quotes Attributed to ¶¶ 75, 76 | Actual Quotes from ¶¶ 75, 76 |
|---|---|
| 75: "USB cashed the January 15, 2024 settlement check of $100, manifesting acceptance of the accord and satisfaction terms under controlling Minnesota law. Under T.B.M. Props., 346 N.W.2d 203 (Minn.), 'if a creditor receives a check that was sent on the condition that it will be accepted as full payment, he or she either must decline the offer and return the check or accept it pursuant to the condition expressed on it.'" (Doc. 58 at 9–10.) | 75: "Credit and Moore did this in furtherance of their business as abusive debt collectors who disregard consumer protection laws." (Doc. 8 at 49.) |
| 76: "On June 8, 2024, plaintiff sent USB a second settlement offer stating: 'Cashing constitutes full satisfaction of all alleged amounts for all alleged accounts associated with the undersigned's name at your organization/enterprise. It is a waiver of all previously alleged and purported contracts/agreements/judgements/fees/costs/any liability against any interested parties.' [1]" (Doc. 58 at 10.) | 76: "The negligence was reasonably foreseeable. The defendants failed at communicating that information (FDCPA). It was relied upon to chart a course of action as a least sophisticated consumer and was justified in relying on material representations. The representations caused confusion, despair, and willfully humiliated as alleged throughout." (Doc. 8 at 50.) |

This is ostensibly the result of generative AI. The Court takes great concern with Plaintiffs' unscrutinized use of AI to fabricate non-existent quotes to refute this Court's prior order. Such abuse is particularly egregious where Plaintiffs' Motion included a verification page, wherein both Plaintiffs signed: "All the facts herein are true, correct, complete and admissible as evidence, and the claimant will testify as to their veracity. All stated herein is true and affirm under oath and penalty of perjury all herein." (Doc. 58

---

[1] Parts of this alleged settlement language are found in a photograph exhibit embedded in the FAC, which is apparently a letter mailed to Citi Bank—not U.S. Bank—on June 1, 2024—not June 8, 2024. Importantly, the FAC does not include a paragraph quoting this language. Rather, the pertinent language was only found after zooming in on Plaintiffs' exhibits. (Doc. 8 at 34.)

at 17.)

Plaintiffs' Motion hinged, in part, on the authenticity of these quotes. The specificity of the quotes gave the Court pause as to its prior Order. The Court then wasted time evaluating and cross-comparing Plaintiffs' chimeric argument. Additionally, Plaintiffs' Response brief to LVNV's Motion to Dismiss, discussed below, attributes a quotation to *Baker v. Emmerson*, 734 P.2d 101 (Ariz. Ct. App. 1986) that does not exist. (Doc. 61 at 5.) Plaintiffs' Motion and Response contain classic indicia of AI use: fabricated quotes and rapid turnaround. Both filings are eighteen pages, yet the first was filed three days after the Court issued its Order and the second was filed one day after LVNV filed its Motion to Dismiss. *See Finch v. Block Inc.*, No. CV-25-04247-PHX-JJT, 2026 WL 295167, at *15 (D. Ariz. Feb. 4, 2026) (finding that a plaintiff's "breakneck speed in which she files briefs and other documents" indicates the use of artificial intelligence). Such negligent use of AI places Plaintiffs' credibility in question—to say nothing of their ironic, disconcerting "verification" statement.

Future misuses of AI will warrant sanctions. *See Moore v. City of Del City*, No. 25-6002, 2025 WL 3471341, at *3 (10th Cir. Dec. 3, 2025) ("[W]e warn future litigants, pro se and those represented by counsel alike, that outright dismissal—without a merits ruling—may be an appropriate sanction in a given case, as may monetary or other sanctions, such as an award of the opposing party's attorney fees incurred in responding to fabricated case citations or clear misrepresentations of law spawned by the unscrutinized use of GenAI.").

Accordingly, the Court denies Plaintiffs' Motion for Reconsideration.

### B. Motions to Dismiss

The Court only granted Plaintiffs leave to amend their FDCPA claims against Credit Control and LVNV. (Doc. 57 at 22.) The SAC, however, includes a negligence per se claim, FCRA claim, and breach of contract claim. (Doc. 59 at 13–17.) The Court strikes these counts for exceeding the scope of the granted leave to amend. *J.P. ex rel. Sok-Hang v. City of Stockton*, No. 2:21-CV-00788 WBS AC, 2022 WL 1409648, at *1 (E.D. Cal.

May 4, 2022). Thus, the Court will only consider the SAC's nine counts of FDCPA violations.

Plaintiffs' FDCPA claims primarily rely on two contentions. First, that Defendants incorrectly represented the existence of, and wrongfully attempted to collect on, a debt that was legally extinguished through an accord and satisfaction. Second, that Defendants continued to communicate with Plaintiffs despite their notice of refusal to pay. The Court addresses each in turn.

### 1. *Accord and Satisfaction*

#### a. Applicable Law

"An accord and satisfaction discharges a contractual obligation or cause of action when the parties agree to exchange something of value in resolution of a claim or demand and then perform on that agreement, the accord being the agreement, and the satisfaction its execution or performance." *Abbott v. Banner Health Network*, 372 P.3d 933, 937 (Ariz. 2016) (citation modified). "The four elements of an accord and satisfaction are (1) proper subject matter, (2) competent parties, (3) assent or meeting of the minds of the parties, and (4) consideration." *Id.* "The general rule is that acceptance and use of a remittance by check which purports to be payment 'in full,' or which implies words of similar meaning, or is accompanied by a letter to that effect, constitutes an accord and satisfaction of the larger claim of the creditor, assuming the claim is unliquidated or disputed." *Baker*, 734 P.2d at 104. Accordingly, a "payment of less than the amount owed cannot serve as consideration for an accord and satisfaction if the amount of money owed is liquidated and undisputed." *Leavitt v. Wells Fargo Bank, N.A.*, No. CV-09-214-PHX-JAT, 2009 WL 1178708, at *3 (D. Ariz. May 1, 2009).

An amount is liquidated "if the evidence makes it possible to calculate the amount with exactness, without reliance on opinion or discretion." *Canal Ins. Co. v. Pizer*, 901 P.2d 1192, 1194 (Ariz. Ct. App. 1995). Because an accord and satisfaction "is in the nature of a compromise," there must be an underlying bona fide dispute or controversy to which the parties are impliedly resolving. *Flagel v. Sw. Clinical Physiatrists, P.C.*, 755 P.2d

1184, 1188 (Ariz. Ct. App. 1988). Without such, "[p]ayment of a less amount than is due operates only as a discharge of the amount paid, leaving the balance still due, and the creditor may sue therefor notwishstanding [sic] the agreement" because "there is no consideration for the release, as the debtor is obligated to pay the whole debt, and the creditor entitled to receive it." *Phillips v. Graham County*, 149 P. 755, 757 (Ariz. 1915) (citation modified). In other words, where the amount due is certain and there is no honest dispute that the creditor is entitled to that debt, an accord and satisfaction is nugatory. *See Abott*, 372 P.3d at 937 ("[T]he surrender of a claim which is known to be entirely without foundation either in law or at equity does not afford a sufficient consideration for a compromise." (citation modified)). *But see Brecht v. Hammons*, 278 P. 381, 383 (Ariz. 1929), *overruled in part on other grounds by*, *Ariz. Pub. Serv. Co. v. S. Union Gas Co.*, 265 P.2d 435 (Ariz. 1954) ("[I]t is sufficient to support a compromise that there be an actual controversy between the parties of which the issue fairly may be considered by both parties as doubtful, and that at the time of the compromise they in good faith so considered it.").

### b. Relevant Facts

The SAC states that Plaintiff Oliver Complot acquired the original, pertinent debt through a US Bank credit card. (Doc. 59 at 2.) Using this card, Oliver amassed a debt from purchases such as: "Amazon ($413.49, $97.27, $84.68, $60.10, $5.42);" "Autozone ($16.38 purchase and return)"; "Medical and healthcare expenses (BHS Rehabilitation $100.00, Wellness/Equine $33.50)"; and "Personal court fees (Maricopa County $262.96)." (*Id.*) Plaintiffs never contest the legitimacy and accuracy of these purchases. Rather, the FDCPA claims against Defendants rely on an alleged accord and satisfaction of this debt with US Bank, to which LVNV and Credit Control later sought collection on.

The SAC states: "Around January 2024, a bona fide dispute existed between Plaintiff and US Bank regarding the account, including issues related to the Fair Credit Billing Act and other matters." (*Id.*) That same month, Oliver allegedly "sent US Bank a check intended as payment in full satisfaction of the disputed debt in response to the bona

fide dispute.  US Bank cashed the settlement check with full knowledge of the settlement conditions." (*Id.* at 3.)  Then, in June 2024, "Plaintiff and US Bank executed a second accord and satisfaction.  US Bank again cashed a check intended for full settlement of any remaining dispute.  The second offer was due to US Bank fraudulently continuing collection activities." (*Id.*)

Around October 2024, US Bank then assigned the "already-settled debt" to LVNV[2] for collection.  (*Id.*)  LVNV then sought to collect on this debt, to which Plaintiffs replied that the debt "has already been paid" and they were unwilling to pay.  (*Id.*)  After an alleged follow up email from LVNV, Plaintiffs sent an "offer of settlement" stating:

> This must be some sort of mistake as the above account was previously settled before your alleged acquisition and might be a FDCPA violation. Therefore, in the interest of settlement and closure I have attached this payment. After this payment I am unwilling to pay. This tender is for the purported and alleged debts asserted due.  Cashing constitutes satisfaction of all alleged amounts for all alleged accounts associated with the undersigned's name at your organization/enterprise. It is a waiver/cancellation of all previously alleged and purported contracts / agreements / judgements / reservations / fees / costs / any liability against any interested parties. This is to prevent costly litigation.

(*Id.* at 4.)  LVNV then cashed the check and continued to attempt to collect on the remaining balance.  (*Id.*)

Around December 2024, Credit Control sent Plaintiff an initial communication seeking collection on the same debt.  (*Id.* at 5.)  Plaintiff then sent an identically worded "offer of settlement" to Credit Control for $150, to which Credit Control cashed and continued to seek to collect on the account.  (*Id.*)

In sum, due to the original accord and satisfaction allegedly settling Plaintiffs' debt, and subsequent settlement offers, Plaintiffs maintain that LVNV and Credit Control violated the FDCPA by representing and seeking to collect on any ongoing debt.

---

[2]  Plaintiffs state that this transfer identified "Resurgent Acquisitions" as the new owner of the debt, but then they received an email from Resurgent stating LVNV was the current owner.  So, Plaintiffs argue LVNV violated the FDCPA by misleading them as to who was the true owner of their debt. (Doc. 59 at 3, 11.)  LVNV includes the email from Resurgent, which clearly states that LVNV purchased the account on 10/28/2024, and that LVNV "outsources the management of its portfolio of accounts" to Resurgent.  (Doc. 60-1 at 2.) Thus, there is no false representation or deception that LVNV owned Plaintiffs' account.

c. Analysis

Plaintiffs fail to plead a sufficient accord and satisfaction defense for the following reasons.

First, Plaintiffs only conclusory allege consideration. Again, for there to be consideration for an accord and satisfaction the amount of the claim must be unliquidated (*i.e.*, uncertain) and subject to a bona fide dispute. *See Baker*, 734 P.2d at 104. Plaintiffs do not contend that the amount owed is unascertainable. In fact, they readily plead many of the exact transitions at issue. Therefore, Plaintiffs' credit card debt is liquidated because it is "possible to calculate the amount with exactness, without reliance on opinion or discretion." *Canal Ins. Co.*, 901 P.2d at 1194. As such, Plaintiffs must adequately plead a bona fide dispute of the debt to support their accord and satisfaction contention. Plaintiffs fail to do so.

Plaintiffs merely recite the elements of accord and satisfaction. They state: "Around January 2024, a bona fide dispute existed between Plaintiff and US Bank regarding the account, including issues related to the Fair Credit Billing Act and other matters" and "Plaintiff sent US Bank a check intended as payment in full satisfaction of the disputed debt in response to the bona fide dispute" to which US Bank cashed. (Doc. 59 at 2.) Plaintiffs do not describe the bona fide dispute; they simply allege its existence and tie it to vague issues related to the Fair Credit Billing Act. The Court cannot accept such conclusory, threadbare recitals. *Iqbal*, 556 U.S. at 678. Moreover, the SAC never contests that US Bank was entitled to the whole debt. Therefore, the Court cannot reasonably infer the existence of an accord and satisfaction of the original debt because Plaintiffs fail to plausibly allege a bona fide dispute of US Banks' claim. Removal of this piece necessarily causes the remaining accords and satisfactions to topple; each dispute that a debt is owed because of the original settlement. Consequently, "[b]ecause Plaintiff[s] inadequately plead[] a factual predicate essential to all of [their] claims, the claims must be dismissed." *See Cohen v. Ainsworth Pet Nutrition, LLC*, No. 2:20-CV-05289-MCS-AS, 2020 WL 7250329, at *5 (C.D. Cal. Oct. 26, 2020).

- 9 -

Based on the foregoing, the Court dismisses counts I, III, IV, V, VI, VII, VIII, and IX of the SAC because they are predicated on Plaintiffs' accord and satisfaction theory. The Court dismisses these counts *without leave to amend* because it seems amendment would be futile. This is Plaintiffs second attempt to amend their Complaint, and yet they have failed to cure these deficiencies despite the Court's prior Order clearly noting that their FAC "does not allege any facts in support of" their accord and satisfaction defense. (Doc. 57 at 11); *Nieuwejaar v. Nationstar Mortg., LLC*, No. C15-1663JLR, 2016 WL 1436123, at *4 (W.D. Wash. Apr. 12, 2016), *aff'd*, 700 F. App'x 723 (9th Cir. 2017) (denying leave to amend because plaintiffs' amendment failed to cure the "identified deficiency, which indicates to the court that further amendment would be futile"). "Where the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, the district court's discretion to deny leave to amend is particularly broad." *Dreamstime.com, LLC v. Google LLC*, 54 F.4th 1130, 1143 (9th Cir. 2022) (citation modified).

### 2. *Failure to Cease Communication*

The remaining count II alleges Defendants violated 15 U.S.C. § 1692c(c) of the FDCPA because they continued to communicate with Oliver after receiving written notice that he refused to pay the debt. (Doc. 59 at 8.)

Section 1692c(c) states:

If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except--

(1) to advise the consumer that the debt collector's further efforts are being terminated;

(2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or

(3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.

Plaintiffs allege that Oliver emailed LVNV that he refused to pay the debt. (Doc. 59 at 3.) This is confirmed by the email LVNV attached to its Motion, wherein Oliver

- 10 -

stated: "I am unwilling to pay this." (Doc. 60-1 at 2.) Thus, LVNV had clear written notice that Oliver refused to pay the debt, and thus was required to cease communications with him "with respect to such debt." § 1692c(c). Plaintiffs allege, however, that "[d]espite Plaintiff's clear refusal to pay, [LVNV] emailed again, violating 15 U.S.C. § 1692c(c)." (Doc. 59 at 4.) Additionally, Plaintiffs allege the settlement offer sent to LVNV stated, in part, "[a]fter this payment I am unwilling to pay." (*Id.*) Nevertheless, Plaintiffs allege LVNV cashed the settlement payment and "sent another communication." (*Id.*)

LVNV argues these allegations are too conclusory to withstand Rule 8's pleading standard. (Doc. 60 at 15.) The Court disagrees. Once LVNV received written notice of Oliver's refusal to pay, § 1692c(c) required LVNV to "not communicate further with the consumer with respect to such debt." The plain language of this statute evidences § 1692c(c)'s sweeping prohibition:

> While Congress appears to have intended the [FDCPA] to eliminate abusive collection practices, the language of § 1692c(c) is broader: it not only states that a debt collector may not make a demand for payment following a cease-communication letter, but also prohibits communication of *any kind* other than those falling within the three exceptions.

*Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 398 (6th Cir. 1998) (emphasis added). Put simply, "communications 'with respect to' a debt plainly include . . . those communications conveying anything regarding the debt at issue." *Barbara Walden-Curry v. MediCredit Inc.*, No. 25-CV-60919, 2026 WL 778089, at *10 (S.D. Fla. Jan. 23, 2026), *report and recommendation adopted*, No. 25-60919-CIV, 2026 WL 778086 (S.D. Fla. Mar. 6, 2026) (rejecting the argument that a communication that is only informational does not plausibly violate § 1692c(c)). The FDCPA's definitions support this reading. 15 U.S.C. § 1692a(2) defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." Here, Plaintiffs allege Oliver received an "email" and "another communication" from LVNV after it received his refusal to pay. The Court would have to speculate that these emails were blank to side with LVNV's contention that these allegations are too conclusory. But doing so would contradict the long-standing admonition to construe pro se pleadings liberally. *Estelle v.*

*Gamble*, 429 U.S. 97, 106 (1976).  Accordingly, Plaintiffs plausibly allege that LVNV communicated information to Oliver regarding his debt after receiving his written refusal to pay in violation of § 1692c(c).

The same is true for Credit Control.  Plaintiffs allege that the settlement offer to Credit Control included a statement: "After this payment I am unwilling to pay." (Doc. 59 at 5.)  After receiving the settlement payment, Plaintiffs allege Credit control "sent another communication." (*Id.*)  Credit Control confirms that this communication to Oliver was with respect to his debt by attaching the email to its Motion.  That email thanked Oliver for his "payment in the amount of $150.00 that was received on 12/23/2024," and provided the account balance on his debt. (Doc. 62-1 at 1.)  Although Credit Control's argument that this communication was not in connection with the collection of a debt misunderstands § 1692c(c)'s broader prohibition, it is equally unavailing.  The email inconspicuously states: "This communication from a debt collector is an attempt to collect a debt.  Any information obtained will be used for that purpose." (*Id.*)  Accordingly, Plaintiffs plausibly allege that Credit Control communicated information to Oliver regarding his debt after receiving his written refusal to pay in violation of § 1692c(c).

Irrespective of the foregoing, the Court dismisses any claims advanced by Corina Tolamaa against Defendants that they violated § 1692c(c) because the SAC does not allege any facts suggesting Defendant's communications were directed to her.  Thus, Corina lacks standing to bring count II.  Because this is her only remaining count, the Court dismisses Corina from the case.

**IV.    CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED granting in part and denying in part** Defendants' Motions to Dismiss (Doc. 60; 62).  The Court grants Defendants' request to dismiss with prejudice Counts I, and III–IX of Plaintiffs' Second Amended Complaint (Doc. 59).  The Court denies Defendants' request to dismiss Count II of Plaintiff's Second Amended Complaint (Doc. 59).

**IT IS FURTHER ORDERED striking** Counts X–XII of Plaintiff's Second Amended Complaint (Doc. 59) for exceeding the scope of the Court's prior grant of leave to amendment.

**IT IS FURTHER ORDERED** denying Plaintiffs' Motion for Reconsideration (Doc. 58).

**IT IS FURTHER ORDERED dismissing** Plaintiff Corina Tolamaa from the case for lack of standing.

Dated this 23rd day of June, 2026.

Honorable Susan M. Brnovich
United States District Judge